Good morning, Your Honor. Sam Leonard representing the plaintiffs in this action. I would like to reserve five minutes of time for rebuttal. Please watch the clock. Plaintiffs are asking this Court to reverse the District Court's decision dismissing their CPA claims. We are not asking this Court to reverse the District Court regarding FDCPA liability and how it relates to the statute of limitations. I think it's very important to point out what this case is. This is not a case of technical FDCPA violations or technical Consumer Protection Act violations. This is exactly the opposite of that. This case is serious violations of debt collection law. This case deals with submitting false and misleading declarations to collect on judgments. That is exactly the type of conduct that the CPA was meant to regulate to keep a fair marketplace. The defendants are trying to get out of this liability on technicalities. The reason that doesn't work is that the CPA doesn't allow for inventive, unfair, and deceptive conduct to avoid liability. The facts. Can I start just by asking about Douglas' claims? Because it seemed that your, if I read the complaint correctly, the allegations of false affidavits was based on the consent order that TransWorld entered into with the CFPB. And that covered a period between November 1, 2014 and April 25, 2016. And the affidavits in Douglas' case were filed on March 2017. So what is the support for Douglas' claim that the affidavits were false or lacked supporting documents? Absolutely. So what defendants don't really want out there is that what's false about them is that their schedules, schedules of loans that were transferred from the original lender that finally wound up at the collegiate trust. Those schedules are missing. Is that in the record that the schedules relating to Douglas' claims are missing? Yes. I believe that, I can't give you the pin site, but I can on rebuttal. But yes, I mean, what we're saying is that they're trying to authenticate records, the schedules, that don't exist. Now, it probably should have been highlighted with stars next to it, but that's the reality of what's happening here. This is not a case where we're saying, you know, we're guessing you have insufficient proof. This is a case where we're saying, you're trying to say you have sufficient proof, you're trying to say you have these schedules, and we know you don't have these schedules. The consent order didn't say all of the claims or all of the instances. They said in numerous instances the affiance lacked such personal knowledge, and in some cases the complete documentation didn't exist. So the consent order was actually carefully drafted to say only some or in many cases. So what you're saying now, if I'm understanding, is that in all cases, in your view, and I'm wondering what the evidence was and why it wasn't in the complaint or why the allegation wasn't in the complaint, because in the complaint the reliance was on the consent order. Absolutely. So the complaint puts forth a plausible claim. We're on a 12B6 motion here. We're saying that it's likely that this happened. We haven't even been able to get into any discovery. So there's no basis in the complaint for Douglas' claims. Is that correct? No, that's not correct. If it's relying on the consent order, which is between November 2014 and April 2016? Absolutely not, because we're required to state a plausible claim. And what is the basis for the false affidavits for Douglas? And I won't take you any longer. Just point me to the paragraph in the complaint. I don't know. I'll have to get another rebuttal. Okay, fine. Thank you. So moving on. So another key point here is that TSI and Patten-Odd and Felix are licensed collection agencies under Washington law. Matthew Chung works for Patten-Odd and Felix. Is that the law firm? No.  That was one question I had, was why is the law firm? I guess everything was dismissed, including the law firm or the collection agency law firm. But why would there be a claim against them? I mean, if it's a law firm, even if it's a law firm acting as a collection agency, aren't they bound by the ethical obligations of a lawyer? It concerns me that you could have a claim against a lawyer in these circumstances. Absolutely, and it would concern me as well. But they're fundamentally different. Patten-Odd and Felix only collects on defaulted claims. They're doing it for TSI, who only collects on defaulted debts. They have, to my knowledge, one attorney and a ton of collection agents, right? Just because you have a licensed attorney who's filing the claims for your collection agency doesn't take you outside the governance of Washington's Consumer Protection Act in the CPA and the Collection Agency Act in the FDCPA. It just doesn't do it. There are two heads there, right? There are a collection agency first and a law firm as well that collects through the courts. And Washington law is clear that if your primary practice is litigation through the courts to collect on debt, then you can be governed under Washington's CPA. Short v. Dimopoulos said that. And it was, I want to say, Evergreen v. Holt as well that says it would be ludicrous to assume that an entity that collects through the courts could not be governed under Washington's Collection Agency Act in the CPA. They literally used the word ludicrous. And the reason is that the CPA is meant to be a gap filler. It's a broad statute that's trying to prevent people from working the system. And so that's, I believe, what we have here. I mean, keep in mind our duty at this stage of the litigation is plausible claims. And if you look at Eric's case, Eric said it's a question of fact. This is a question of fact. Whether or not a law firm's services they are providing regard entrepreneurial aspects is a question of fact. If it is a question of fact, then it wasn't properly decided on the 12b-6 motion. I'd like to move on to the statute of limitations with regard to plaintiffs' FDCPA claims and the per se CPA claims arising out of those. I think this court said it best in Stimson v. Midland. The statute of limitations doesn't change the rights of the parties. And mind you, I'm not exactly quoting. It only affects their available remedies. The district court erred, and it erred in that it conflated what is a violation of a statute with what is liability under the statute. Plaintiffs' rights under the FDCPA remain the same. Their remedy, being able to go into court and assert those claims and prevail on those claims, changed when the statute of limitations ran. That doesn't hold true for their per se CPA claims based on those violations. That's just not the case. The statute of limitations is an affirmative defense. And as an affirmative defense, it doesn't deny liability. It just says even if there is liability, you don't have a judicial remedy. And we do have a judicial remedy under the CPA. And that continued regardless of the FDCPA's statute of limitations running. I want to turn your attention to injury. So whether you're under the per se CPA violations that you've alleged or what you've termed the private CPA violations, in every context you have to prove injury, correct? Absolutely. What is the injury that you have that you can establish a claim based on? So if we look at the facts, they filed cases with false affidavits to obtain judgments. And in Hoffman's case, they went and garnished her. And they continued to garnish her. So Hoffman's pretty easy. The garnishment fees and everything else that they've tried to collect from her, that's injury. Has money actually been garnished from her? Yes. And where is that in the record? I will have to get you the exact site. The other thing is even if that hadn't occurred, under Washington's CPA, injury can be paying an attorney to go investigate, paying an attorney to look into something and say whether or not this liability actually exists. How does that work here when my understanding is none of the named plaintiffs in the case dispute that they got a student loan and none of them are disputing the amount of the student loan? Absolutely. But there's another piece to this. In our marketplace, you have to know that the person you're suing you is the person actually entitled to collect on that debt. And we don't know that. You can't allow a marketplace where anybody is allowed to go sue anybody without having to prove that they're actually entitled to collect on that debt. These are not the original lenders. National Collegiate Student Loan Trust, as we understand it, is a bundle of a whole bunch of student loans. When we've heard that argument, somebody always asks whether the debtor paid the money into the court in an interpleader action so that the correct person could be given the money owed. Did that happen in this case? No. Okay. No. So the Washington courts have said that defending against a collection action or bringing a CPA complaint did not constitute injury to business or property for this purpose. So only investigation costs maybe of some sort would be covered. So what does the record tell us about what costs other than responding to the collection action or bringing the CPA action were incurred by the plaintiffs here? So we have Hoffman, who was garnished, and we discussed that. Okay. And you said you will give us a site. Yeah. I can put in whether or not we're so specific to say she was garnished and paid specific amounts. I can't remember, but she was garnished. And then with regard to the others, I mean, you have to keep in mind that injury is not the attorney's fees they would incur in the CPA action. That doesn't count. We're not saying that. It's the defense of the other action that should have never been brought based on the false affidavits. Except for Sinolite is contrary to that position, isn't it? Clem, the more recent one, is not. And also neither is Panag. They both say that defense of an action can be injury. Because injury to business or property, they do not say the cases are clear that even a penny can be injury under the CPA. Now, we're not saying that. We're saying it's greater than that. But also I would say. So I know that Sinolite does say that defending a collection action is not an injury. So where in Panag does it say that defending a collection action is an injury? Panag. Again, I'll have to get the Penn site. I mean, what I remember from Panag is that it talks about the investigation idea that you've been arguing and specifically says, quote, to dispel uncertainty regarding the nature of the alleged debt, which is why I was pointing out none of the plaintiffs here seem to be challenging the nature of this debt. So how do you even fall under that? Well, I guess it would depend on what the nature of the debt. A couple of points here. The district court didn't dismiss us on injury, first off. The district court dismissed us on litigation. It didn't even actually dismiss us on litigation privilege, but it dismissed us on the trade or commerce element not being met. So first off. So is it your position we can't reach that issue? It's my position that the issue wasn't briefed. But with regard to the defense of the action, that would be an investigation into the action. And I can see I'm running really short on time here. Thank you. Okay, thank you. Good morning, Your Honors. I'm actually going to be sharing time with James Schultz here for TSI. So I don't know if we can split that in half. Please just watch the clock. How many minutes do you have and we'll help you. Yeah. Well, I'm taking 50 percent of the time, but I'm going to shoot for seven minutes. All right. So that would leave eight left. And as Your Honors indicated, the appellants in this action admit that they owed the debt and they didn't pay it. Can I ask a question about that? Yes, Your Honor. Because as I look at the, I guess this is the amended class action complaint, ER-43, regarding plaintiff Esther Hoffman, they allege Esther began making small payments to PNF because she could not afford to defend her case in court. Is that enough for harm? I mean, you just said that they hadn't made any payments, but it looks like they had. Well, I didn't say they didn't make any payments. Okay. I said they didn't make payments. Well, what's the difference? You mean they didn't make enough of their payments? Well, she stopped. Yeah, she didn't. So is the allegation here in the complaint that she made payments before Transworld started to take action to collect? If Your Honors don't mind, I'd like to leave the injury because Transworld was the only one that briefed that one. Got it. What I'd like to start with today, Your Honor, if I may, is also the statute of limitations, because I think it's probably the most important and far-reaching. And the appellants here, as they said, are not challenging that the FDCPA claims are time-barred. They also haven't submitted any case where the FDCPA was at issue was the CPA extended or any other statute extended, and I think there's a reason for that. And I'm going to be building up to the Walker case because I think that's their best case. It's a Walker and Mackey as cases. Right. And I'm going to build up to Walker. It was in their reply brief, so we didn't have an opportunity to brief it. All right. So I'm going to give a little bit of background here as to why I think that Walker case does not apply here. And I think the reason is, and this is very important, I believe Congress expressly stated that no liability, not just any cause of action, but no liability should exist after one year. If we look at the statute itself, 15 U.S.C. 1692K subsection D, it says an action to enforce any liability created by this subchapter, any liability created by this subchapter, may be brought in any appropriate United States district court without regard to the amount in controversy or in any other court of competent jurisdiction within one year from the date on which the violation occurs. When we get to the other state statutes, these statutes extending the CPA are all state statutes, not federal statutes, which, of course, have supremacy. These state statutes have different statute of limitations language, which do not talk about any liability created. The Congress intended that any liability created under any statute be extinguished after one year. And it's well established in considering statutes that we can't add any language or subtract any language or change the statute just because we think the legislature failed to put in what was desired. Do you have any other case that you could point us to where language such as that in a federal statute then was held to apply to cases like in California? We have the unfair competition law, which is any unfair practice. The Washington CPA law seems similar. Do you have any case where they held there's some sort of preemption principle so that a state liability couldn't be based on a federal violation? You know, I don't know that that – it may be. I know that in some of the claims that failed on the merits, which – I mean, the plaintiffs don't disagree that where the underlying claim fails on the merits, there's no per se claim. And some of those deal with federal statutes like the TILA statute. But I don't know that there is any case that analyzes the FDCPA language specifically. Because it's sort of a preemption principle. So what – even if it wasn't the FDCPA, but some other federal statute with a short statute limitation, say, and you're saying that we've held, even if it was TILA or whatever it was, even a federal statute that doesn't have a private cause of action, and we've said under some sort of preemption analysis, a state liability statute couldn't be based on a violation of the federal statute. Well, Your Honor, I think it may have to do with the language of the specific statute. So what I'm – I just want to know if there is another case I could look at or whether this would be an issue of first impression in your view. I don't – it could be. I mean, it depends how deeply you want to look. I think we just have to look at the statute itself in this case. Okay, so the answer is no, you're not aware of another case. I am not. Okay, thank you. And so I have a follow-up question then. Yes. Do you have a case that is construing the provision of the FDCPA in the way that you're construing it? Yes, plenty of cases. We cited the Collins case and the Linehan case where the court basically said, quote, a violation of the FDCPA may serve as a basis for a per se violation of the CPA, but time-barred claims under the FDCPA may not support a claim. I'm aware of the cases that say that, but there's not a whole lot of analysis in those cases as to why they're reaching that conclusion. So my question is, are you aware of a case that actually goes through an interpretation exercise on that provision in the FDCPA and comes out with the result that you're advocating, that this is a unique language provision that we have to read in a unique way? Well, I think that the cases from foreign jurisdictions have a bit more analysis than ours. So, for example, we cited to the Morales case, the Byrd case, and the Shirk case. I think some of them have more analysis. Those have to do with the Pennsylvania Consumer Protection Act and the Virginia Consumer Protection Act, which are very similar to our own. And they basically said that we shouldn't be permitted to circumvent the will of Congress, and that was their language. I'd have to find it here. So the Morales does an analysis, and it says, allowing the plaintiff to pursue the claim under Pennsylvania's CPA would circumvent TILA and RESPA's respective statute of limitations. So there's an answer to your question, Your Honor. Which one was that? That was the Morales case, 651 F sub 2nd at 292. And they said TILA and RESPA both have a statute of limitations, and allowing them to be used as a per se claim in the Consumer Protection Act of those states would circumvent the will of Congress. So there's district court cases. Is there an appellate case that you could point us to? Not that I recall, Your Honor. I think the ones that we've cited to. They are published. At least two of them are. But there is, well, I mean, the Virginia case is the Virginia Court of Appeals. Well, you're eating into your colleague's time, if you want to. Oh, am I? Sorry. I had so much more I wanted to talk about. I will say this, though. We are talking about a lawyer and a law firm, as Your Honor was talking about. I can have a driver's license, and I don't have to be driving all the time. Someone with a collection agency license isn't always acting as a collection agency. They also have a law license, and the specific actions that my client was taking here was only filing testimony. And we've briefed the issues on litigation privilege, which was never argued. So your client was never directing actual collections? It was only doing legal work? Is that what you're saying? Yes. They only filed that, and I don't want to take away my colleague's time here. I will make one last point, and that is that in regard to the consent judgment, my clients took no actions after that was filed, and they weren't a party. Good morning, Your Honors. May it please the Court. I'm Jim Schultz, and I'm here on behalf of Transworld Systems, Inc. I don't want to rehash ground, but there are a couple things I'd like to point out right from the beginning. The first thing is we haven't talked about yet is the litigation privilege, but what we heard from the appellants here is that the conduct we're talking about has to do with affidavits. What my clients allege to have done wrong is affidavits, signing, filing affidavits. That is testimonial conduct on behalf of TSI in support of the debts. So the witnesses, though, I mean, the litigation privilege seemed to protect the witnesses, and the witnesses here are not defendants, are they? They're employees of Transworld Systems. They're individual employees, but Transworld Systems was not the witness. Is that right? That's correct. Transworld Systems is the servicer for these loans. And then the cases seem to be focusing on defamation claims. Are there litigation privilege cases which are protecting against CPA-type claims as well? I believe so, Your Honor. I think the J&J case directly deals not necessarily with the CPA claim, but what J&J says is that not only are defamatory statements subject to the litigation privilege, but any false statements made whatsoever. And what we're dealing with here is a CPA claim that's based on supposedly false affidavits. So necessarily, if it's testimonial in nature, which is all TSI has done here in regards to these affidavits, it must follow then that that testimony is privileged because even if the plaintiffs are correct and that the affidavits were false, which we could fight about that later, it's immune. And that's what J&J stands for. That's what all the cases stand for here. But more importantly, what we also heard earlier today was that these affidavits are supposedly false because they're trying to authenticate the schedules. If we take a look at the actual record, that's not what the affidavits are saying. What we have here is the appellants are trying to bootstrap their claim to shoehorn it into the CFPB action. The CFPB action is not applicable here. And, Your Honor, you touched on this a little bit for the reason why. There's a couple of reasons, though. One is, as you pointed out, the time period doesn't gel. The conduct that TSI was accused of committing in the CFPB was from 2014 to 2016. As it relates to Ms. Hoffman and Ms. Douglas, the conduct there didn't occur during that time period. And then we're also taking this CFPB order that was entered into September of 2017 and trying to apply it backwards to create some sort of duty that TSI had to perform as far as auditing their accounts on actions that had already been taken. So the affidavits and the filing of these actions were all done before the CFPB actually entered the order. And it's basically a retroactive application that the plaintiffs are trying to use that CFPB order for. And it doesn't work that way because, one, the CFPB order doesn't make any actual findings. These are allegations. It says in some instances, in many cases, things like that. It's definitely conditional language. There is no evidence and there's no plausible allegations that any of the loans of any of these plaintiffs actually had the problems that the CFPB thought they identified. They don't allege it. It's not there. The affidavits don't say what they say it says. The affidavits do not attempt to authenticate the schedules. What the affidavits do is they authenticate the transfer of these loans from the original creditor, say a J.P. Morgan Chase, to the National Collegiate Student Loan Trust. That's done by two documents, a pool supplement and a deposit and sale agreement. Now exhibits to those documents are those schedules, but the affidavits themselves don't mention those. And what the schedules are is essentially a spreadsheet of the transferred loans. It contains sensitive individual account information like the person's name, Social Security number, account data. Of course that wouldn't be filed in the public record. No one's going to submit something to the court that's going to have thousands of people's Social Security numbers in this pool of documents that were transferred when we only need to focus in on the one. And was that provided to the CFPB? The CFPB consent order certainly indicates their finding that in many cases there were false or unsupported affidavits. And that's, as opposing counsel points out, we're here on a motion to dismiss. So why isn't that enough? Because the CFPB simply made allegations. There's no evidence that what the CFPB alleged actually occurred. TSI signed the consent order, no doubt about that, but they denied liability. They denied any wrongdoing. They denied any misconduct. There was no plausible allegations. And there was no investigation that came up with any evidence in that? Well, there was an investigation performed by the CFPB, but pursuant to the CFPB regulations, that investigation is confidential and privileged by the CFPB. Transworld System doesn't have access to what the investigation found. For example, the CFPB can go and interview witnesses or even take depositions of TSI employees, and TSI doesn't even get access to those documents. So what the CFPB may have found in their investigation is something the CFPB alone wouldn't know. But presumably there was, I mean, how much credit can we give to these allegations that are in the consent decree? I understand that your client is saying, hey, we're not agreeing to liability here or conceding anything, but why isn't it plausible if they put that allegation in an investigatory document, why can't that be evidence of plausibility? That's all we have to find, right? That it's possible that there was a legal violation here. A couple of reasons I think, Your Honor, are critical. One, you have to look at the specific affidavits that the plaintiffs or the appellants had here versus what is described by the CFPB, and they're not the same. Again, these affidavits don't specify here is Schedule 2 or Schedule 2 says this. There's no reference in any of those affidavits as to what the content of the affidavit says. The second point, Your Honor, is the CFPB findings specifically are limited. They don't say this was a universal grand scheme. They say in some circumstances, in some instances, in many cases. It doesn't define how many. And Transworld Systems is one of the largest debt collectors in the world. They service the entire portfolio of 15 different National Clearance Student Loan Trusts. The scope here is large. So to just assume that because maybe it happened in one case at a different time period from when the CFPB was looking and it happened here, it's not plausible. Well, but the different time period is only as to one of the plaintiffs. It's for two of the plaintiffs, I believe, Your Honor. The only affidavits that were filed during the CFPB period were the Kim's. That was in 2015. But Hoffman's affidavit and Douglas' affidavit were, well, I think Douglas was in late 16 and Hoffman, I believe, was in 2017. I may have had those reversed. But those two happened after the CFPB investigation relevant time period. You're over your time, but I have one question if Judge Okuda will allow me. So what I'm trying to – you want to say that the consent order shouldn't be a compelling piece of information for us in this analysis, and I understand your argument on that. The problem that I'm having is that's not the only thing here. In all three of these cases, your client actually backed off on continuing with collection activities because there were problems with being able to enforce these loans and having the proper documentation and having all of that in place. Am I wrong about that? I believe you are wrong, Your Honor, with all due respect. Okay. Is it true that they backed off? Yes. Is it because it was a problem? No. The record has the documents. We have in the record where the loan documents are. For Hoffman, it's at ER 215. For Douglas, it's at ER 265. For Kim, it's at ER 396. That's the transfer documents. We have the loan origination agreement, and we have the transfer documents. What frequently happens in debt collection, and there is case law cited in our brief on this, is that it's not always taken to the limits. Debt collectors and their lawyers may not take a case through trial because sometimes the economics of it don't actually warrant it. When you're dealing with relatively small loans, the cost of flying somebody, a witness across country, to attend a trial isn't always warranted. So debt collectors don't always do it, and there's case law in the FDCPA context that specifically says simply filing a lawsuit and not taking it to the end is not an FDCPA violation, including the Seventh Circuit and St. John. Thank you. I think you have some time for rebuttal. Thank you, Your Honor. Real quick, both the Hoffmans and the Kims were garnished. The Kims in particular had money withheld and paid into the court registry. Can you cite us to the record, please? Yeah, so that's ER 50. And then at ER 46, that talks about Hoffmans receiving garnishment papers for Umpqua Bank. And then I forgot to bring it up. And the Kims were at ER 50? So the Kims is at ER 50, and Hoffman's at ER 46. And so I'm going to point the court to PNAG. And in PNAG, it says that the ‑‑ so it's actually citing Mason v. Mortgage, A.M., Inc., 114, Wynn 2D. Before you get there, ER 46, are you referencing paragraph 53 of the complaint? I believe so, yeah. So it was a writ of garnishment that was issued. You don't allege, though, that any money was actually taken? At this stage of litigation, we don't need to allege every fact. It is plausible. Well, I mean, I think what we're talking about here is harm. And your point is it's plausible that if a writ of garnishment is issued, that the money was taken out. I would say it's more than plausible, but you're correct. The specific where the money went. What about the reference I had to, sorry, paragraph 38 of the complaint? Is that helpful at all, or is that not, because Esther was making those payments before there was a collection action? Give me one second. Is it helpful at all to what? To the harm. I mean, you're saying, did they make any payments here, trying to establish that there was actually harm? There was some payments, and just to correct, it is injury. So they had to defend these actions that were illegally brought, we argue, with false affidavits. The defense of that requires investigation by attorneys. They all had attorneys that investigated and then defended them in these actions. And that is sufficient, the investigation, as the court pointed out. I mean, saying that defense in the litigation isn't injury, but investigation is. Well, there was investigation before we all stepped up and defended those actions. It looks like I'm over. You're over time. Thank you very much. Thank you. And the case of Hoffman v. Transworld Systems, Inc. is submitted, and we're adjourned for this session. All rise. This court for this session is adjourned.
judges: Ikuta, R. Nelson, Hunsaker